UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 3:19-cr-00041-MMD-WGC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| BENJAMIN D. MORROW, | |
| Defendant. | |

**I.   SUMMARY**

Defendant Benjamin D. Morrow was indicted on two counts of distribution of child pornography, and four counts of possession of child pornography. (ECF No. 1.) Before the Court is Morrow's motion to suppress. (ECF No. 46 (the "Motion").)[1] In a prior hearing, the Court granted Defendant's request for a *Franks*[2] hearing contained within his Motion (ECF No. 80), and the Court held the *Franks* hearing on March 3, 2021 (ECF No. 90 (the "Hearing")).[3] Because Morrow fails to demonstrate by a preponderance of the evidence that the affiant intentionally omitted information or included misleading information in the search warrant ("Warrant"), and as further explained below, the Court denies the Motion and will not suppress any evidence.

///

---

[1]The government filed a response. (ECF No. 52.) Morrow filed a reply (ECF No. 64.)

[2]*Franks v. Delaware*, 438 U.S 154 (1978).

[3]Following the initial hearing, the government filed a motion for leave to file a supplemental response to Morrow's Motion (ECF No. 83) with amended exhibits (ECF No. 84). Morrow subsequently filed a motion for leave to file reply with reply attached. (ECF No. 86.) The Court granted both motions at the Hearing. (ECF No. 90.)

## II. FINDINGS OF FACT[4]

The Court relies on documents filed by the parties in support of the Motion and related briefs, along with testimony offered and exhibits admitted at the Hearing, to construct this factual background.

Complaining witness Roxanne Treesh ("Treesh") reported to law enforcement officials in Ohio that she had been contacted by an individual via text message from email account 'jayd@secmail.pro' who sent unsolicited photographs of child pornography and requested photographs of the sexual abuse of her minor daughter. (ECF No. 46 at 1.)

Federal agents in Ohio began an investigation. (*Id.*) On April 9, 2019, federal investigators interviewed Treesh who consented to a search of her phone. (ECF No. 52 at 3.) Investigators reviewed text messages from the individual ("UNSUB")[5] to Treesh, and discovered three images of a young female child being anally penetrated by a male. (*Id.*) Investigators then assumed the identity of Treesh, ("OCE-7478"),[6] and began texting with UNSUB. (*Id.*) On April 9, 2019, OCE-7478 asked UNSUB to chat on the messaging application Kik, and UNSUB provided his username, 'adventurej0hn.' (*Id.*) OCE-7478 briefly spoke with UNSUB on Kik on April 9, 2019 and April 10, 2019. (ECF NO. 52-4 at 14-15.)

UNSUB then asked to speak with OCE-7478 over the messaging application Telegram. (*Id.*) OCE-7478 provided a Telegram account. (ECF No. 53-2 at 15.) The affidavit ("Affidavit") fails to state how UNSUB and OCE-7478 connected on Telegram.[7]

---

[4]*See* Fed. R. Crim. P. 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record.").

[5]Both the Affidavit and government refer to the individual sending messages from 'jayd@secmail.pro,' who initially referred to himself as "John," as "UNSUB." (ECF No. 47-1 at 2.) The Court will refer to the individual as such.

[6]The government refers to the officers who assumed the identity of Treesh as OCE-7478. The Court will similarly refer to the agents as such.

2

On April 11, 2019, OCE-7478 and UNSUB began messaging on Telegram. On April 12, 2019, UNSUB sent eight images of child pornography to OCE-7478 over Telegram. (ECF No. 52 at 4.)

On approximately April 16, 2019, investigators subpoenaed Kik for subscriber and Internet Protocol ("IP") address information for account 'adventurej0hn.' (ECF Nos. 52 at 4, 46-6 at 3-4.) Kik provided subscriber information for 'adventurej0hn'—John C. and email address jayd@secmail.pro. (*Id.*) Kik provided two IP addresses: 172.221.35.154 and 149.56.182.0. (ECF No. 46-6 at 4.) Investigators conducted an Arin.net search for the first IP address which was connected to Charter Communications, with the second IP address connecting to CactusVPN. (ECF No. 52 at 4-5.) On April 16, 2019, investigators served an emergency disclosure request on Charter for three dates: 04/10/2019 at 03:16:36 UTC, 04/10/2019 at 03:50:12 UTC, and 04/10/2019 at 03:16:36 UTC. (ECF No. 46-4 at 2.) Charter provided investigators with the subscriber information for Benjamin Morrow at 313 Appaloosa Way, Fernley, NV 89408 over the telephone. (ECF No. 52 at 5.)

On April 20, 2019, UNSUB messaged OCE-7478 on Telegram: "I am going to see my fuck toy for spring break." These messages prompted Ohio Federal Bureau of Investigation ("FBI") agents to contact FBI Special Agent Cassie Redig ("Agent Redig") in Reno, Nevada. (*Id.*) On April 20, 2019, Agent Redig contacted Lyon County Sheriff Sergeant Ryan Powell ("affiant" or "Sergeant Powell"). (*Id.*) Investigators searched LSCO records which indicated that Morrow lived at 1361 Horse Creek Way and 313 Appaloosa Way. (*Id.*) Federal agents and local county deputies conducted surveillance outside the residence in Fernley, Nevada where Morrow was ultimately located. (*Id.*) Agents only noted an adult male in the home.

///

---

[7]The government acknowledges that the Affidavit fails to explain how UNSUB and OCE-7478 connected on Telegram. (ECF No. 52 at 4, n.2.)

On April 20, 2019, Sergeant Powell drafted the Warrant and Affidavit. (ECF No. 46 at 3.) Sergeant Powell emailed the Affidavit to Honorable Justice of the Peace Doug Kassebaum ("Judge Kassebaum") of the Walker River Justice Court in Lyon County, Nevada. (*Id.* at 2.) Sergeant Powell then called Judge Kassebaum at 9:32 pm on April 20, 2019 and recorded the call over dispatch. (ECF No. 46-3.) Judge Kassebaum began the conversation by saying "you're good to go." (*Id.*) Judge Kassebaum then swore in Sergeant Powell. (*Id.*) Judge Kassebaum confirmed receipt of the email application and Warrant and granted the request for a nighttime search. (*Id.* at 3-4.) Sergeant Powell inquired if he could sign the Warrant on behalf of Judge Kassebaum who then gave oral permission for Sergeant Powell to do so. (*Id.*) Sergeant Powell signed the Affidavit and Warrant on behalf of Judge Kassebaum at 9:35 pm. (ECF Nos. 47-1 at 15, 46-1 at 1.)

The Warrant authorized law enforcement to search the premises at 313 Appaloosa Way, Fernley, Nevada, 89408 and Benjamin Morrow. (ECF No. 46-1 at 2.) The Warrant also authorized a search of specific computer and technological property. Officers executed the Warrant at 10:35 pm. No child was found at the residence. (ECF No. 52 at 5.) Multiple devices were seized containing tens of thousands of images and videos of child pornography. (*Id.*)

**III.   DISCUSSION**

Morrow argues that suppression is warranted for several reasons. At the initial hearing, the Court heard oral argument on each issue, and allowed three to proceed to the Hearing. The Court addresses the three remaining arguments below—first the two *Franks* arguments, next Morrow's argument regarding improper issuance of the Warrant, and finally, Morrow's argument regarding an improper nighttime search.

As explained below, the Court finds that none of these arguments are sufficiently meritorious to warrant suppression or exclusion of any evidence. Thus, the Court denies Morrow's Motion.

///

**A. *Franks***

Morrow argues that Sergeant Powell made material misrepresentations and omissions in the Affidavit justifying suppression under *Franks.*

In *Franks*, the United States Supreme Court established a two-prong test for overturning a judicial officer's probable cause finding. Under this test, there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S at 171. And here, as noted, the Court determined Morrow made a sufficient preliminary showing such that a *Franks* hearing was warranted as to two arguments presented (ECF No. 80; ECF No. 82 at 44-47) and held the Hearing. That brings the Court to the merits of Morrow's *Franks* challenge.

To prevail on a *Franks* challenge, the defendant must establish, by a preponderance of the evidence, that: "(1) that the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant," and (2) "that the false or misleading statement or omission was material, *i.e.*, necessary to finding probable cause." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (internal quotation marks, punctuation, and citation omitted). "If both requirements are met, the search warrant must be voided and the fruits of the search excluded[.]" *Id.* (internal quotation marks and citation omitted). Under the first *Franks* step, a "negligent or innocent mistake does not warrant suppression." *Id.* Under the second step of *Franks*, the "key inquiry is 'whether probable cause remains once the evidence presented to the magistrate Judge is supplemented with the challenged omissions.'" *Id.* at 1119 (citation omitted). "Probable cause to search a location exists if, based on the totality of the circumstances, there is a 'fair probability' that evidence of a crime may be found there." *Id.* In this case, the Court ordered an evidentiary hearing in regards to two potential omissions and misstatements in the Affidavit. (ECF No. 82 at 44-47.)

///

///

5

### i. Linkage of Accounts

Morrow first argues that the affiant included misleading conclusory statements in the Affidavit when referring to UNSUB as the person who sent all emails, texts, and communications; thus, there was insufficient information for Judge Kassebaum to draw a connection between the email, Kik, and Telegram accounts purportedly used by UNSUB. (ECF No. 46 at 23.) The government responds that there was sufficient linkage to establish probable cause. (ECF No. 52 at 26-27.)

To determine if Morrow can prevail, the Court begins with *Franks* step one. At step one, Morrow must demonstrate by a preponderance of the evidence "that the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant." *Perkins*, 850 F.3d 1109 at 1116. Morrow has not established by a preponderance of the evidence that Sergeant Powell made misleading statements regarding a connection between the three accounts in in support of the Affidavit. Rather, the conclusion was supported by sufficient evidence.

First, the Affidavit notes that UNSUB used his jayd@secmail.pro account to message OCE-7478 his Kik username ('adventurej0hn'). (ECF Nos. 52 at 26; 47-1 at 3.) This tends to establish that the same person operated and used both accounts. Second, the content of the messages themselves, included in part in the Affidavit, "confirm that UNSUB was the user of all three." (ECF No. 52 at 26.) For example, in messages from all three accounts, UNSUB references "playing with" his niece or his "fuck toy." In conversations between UNSUB at the jayd@secmail.pro account and OCE-7478, UNSUB sends photographs of a juvenile and "state[s] that the girl in the pics is 7 years old and that he plays with his niece sometimes." (ECF No. 47-1 at 3.) Over Telegram messages, UNSUB references his "lil fuck toy" and over the recorded Telegram call with Treesh, UNSUB again references his niece. (*Id.* at 4.) Third, UNSUB refers to himself as "John" across all three accounts. On the jayd@secmail.pro account, one text reads, "Its John…" (ECF No. 47-1 at 2), UNSUB's Kik account name is 'adventurej0hn' (*Id.* at 3),

and UNSUB's Telegram account name is '@j0hncc' (*Id*). These similarities and connections across all three accounts are included in the Affidavit to indicate that the three accounts were controlled by the same person. Thus, there is no evidence that Sergeant Powell used conclusory statements to purposefully mislead Judge Kassebaum to conclude there was a link between the three accounts. Rather, the Affidavit included specific evidence of such a link.

Because Morrow has failed to establish by a preponderance of the evidence that Sergeant Powell made a misleading statement in support of the Affidavit, the Court will not move on to *Franks* step two. The Court will therefore decline to suppress any evidence as a result of Morrow's first *Franks* challenge.

### ii. "With Child" Omissions

Next, Morrow argues that Sergeant Powell's statement in the Affidavit that UNSUB was "with child" was deliberately or recklessly false and he omitted material evidence regarding the presence of a child in the home in support of the Warrant. (ECF No. 46 at 10, 25.) Morrow specifically points to contradictory statements found in the Affidavit,[8] the deliberate omission of messages from Morrow,[9] and the deliberate omission of the results of an earlier investigation,[10] to argue that Sergeant Powell deliberately intended to

---

[8]The Affidavit claims that Morrow "may be currently sexually assaulting the juvenile" (ECF No. 47-1 at 1), and later includes a message from Morrow that his niece and her mom were coming "this week sometime not sure what day yet" (*Id*). Morrow argues that because these statements are impossible to reconcile "Sergeant Powell intended to influence the magistrate into believing that exigency required exercising the subject warrant at night, that night . . ." (ECF No. 46 at 10.)

[9]Morrow also proffers as evidence a message, sent after the "this week sometime not sure which day" message, which stated that the niece and her mom were coming "I think on Wednesday, not 100% tho." (ECF No. 52-4 at 27.)

[10]At the Hearing, Morrow examined Sergeant Powell about the circumstances of the home surveillance in an attempt to establish that Sergeant Powell purposefully omitted evidence that no child was seen in the home.

7

influence Judge Kassebaum to believe there were exigent circumstances justifying a Warrant. (*Id.* at 10-11, 64 at 6-8.) The government responds that Morrow failed to make a substantial showing of falsity because Sergeant Powell provided enough evidence for probable cause and was not required to have a certainty as to what "this week" meant. (ECF No. 52 at 15.)[11]

The Court begins with *Franks* step one. Again, Morrow has not established by a preponderance of the evidence that Sergeant Powell intentionally made false or misleading statements or intentionally omitted information in support of the Warrant.

As to the contradictory statements regarding whether a child was currently in danger, Morrow failed to demonstrate that these statements were included to intentionally mislead Judge Kassebaum. Rather, testimony at the Hearing indicated that Sergeant Powell included all the relevant information provided to him, which at times was inconsistent. If anything, the intentional inclusion of inconsistent information is evidence that Sergeant Powell was seeking to provide a more complete picture of the facts as he knew them. Thus, the Court does not find that the inclusion of inconsistent messages was used to intentionally mislead Judge Kassebaum.

As to the text message, "I think on Wednesday, not 100% tho" (ECF No. 52-4 at 27), Morrow has failed to proffer any evidence that Sergeant Powell intentionally omitted the message from the Affidavit. At the Hearing, Sergeant Powell testified that he was not aware of this particular text message. Agent Redig further testified that she did not recall receiving the text message, and even though there is evidence that she did, she did not

---

[11]In its supplemental response, the government provides additional evidence to clarify a statement made at the initial hearing—that Sergeant Powell did not know about the text message that Morrow believed his niece was arriving Wednesday. The government produces a text message from Agent Hunt to Agent Redig that reads "says he thinks niece will be there Wednesday" (ECF No. 83-4) to clarify that "while Agent Redig was not the affiant for the search warrant, nor do these messages identify what the affiant Sgt. Powell specifically knew at the time" there was communication between two agents regarding the Wednesday arrival (ECF No. 83-1 at 8).

8

recall relaying the contents of this specific message to Sergeant Powell nor would she have purposefully excluded the existence of the text message. Therefore, Morrow failed to prove that Sergeant Powell knew about the message in question, let alone prove that he purposefully omitted it from the Affidavit.

Finally, although the Affidavit contains no information about the results of the surveillance, including information that agents did not observe a child in the home, there is no evidence that Sergeant Powell intentionally omitted this to support the Warrant. At the Hearing, Sergeant Powell explained that while he himself did not surveille the residence, the agents who did relayed information to him, including information that an adult man was in the home. At no point did Sergeant Powell specifically inquire if agents had observed a child in the home, rather he inferred that no child was seen in the home because he would have been informed if so. While Morrow argues that failing to include information about a child not being seen in the home is a material omission, the Court is not persuaded. For one, Sergeant Powell testified that seeing an adult male in the house did not alleviate his concerns that a child might be in danger because agents were only able to see a small portion of the house, and thus he could not rule out the possibility of a child in the home given all the other information he had. Further, as noted above, Sergeant Powell included other inconsistent information regarding the presence of a child in the home which again indicates that he was not intentionally omitting specific information so as to mislead Judge Kassebaum, but rather including any evidence that he found relevant. The Court therefore finds that Morrow failed to demonstrate by a preponderance of the evidence that Sergeant Powell intentionally omitted information about the results of the home surveillance.

Morrow has not established by a preponderance of the evidence that Sergeant Powell included misleading statements or intentionally omitted material information, thus Morrow again fails at step one. Even if the Court found for Morrow at step one, Morrow would still fail to demonstrate step two, that "the affidavit, once corrected and

9

supplemented, establishes probable cause." *Id.* at 1119 (citation and internal quotation marks omitted). While adding the omitted evidence and correcting the misleading statements might paint a *slightly* different picture of the urgency of the search—there is still enough probable cause to justify a search based on evidence of child pornography. Sergeant Powell included enough information in the Affidavit, untainted by these argued omissions and misleading statements, for the magistrate to find probable cause to issue the Warrant. Accordingly, the Court will not suppress any evidence based on Morrow's second *Frank's* challenge.

### B. Issuance of Warrant

Morrow next argues[12] that the Warrant should be quashed because Sergeant Powell failed to obtain a signed and sworn affidavit in violation of the Fourth Amendment requirement that a warrant be "supported by oath or affirmation." (ECF No. 64 at 1-6 (citing *United States v. Vargas-Amaya,* 389 F.3d 901, 904 (9th Cir. 2004)).)[13] Specifically, Morrow proffers the transcript of the telephonic conference between Sergeant Powell and Judge Kassebaum as evidence that Sergeant Powell lacked permission to sign the Affidavit.[14] (*Id.* at 3-4.) Further, Morrow argues that the swearing in of Sergeant Powell is not enough to satisfy the oath or affirmation requirement because Judge Kassebaum never asked if the information contained in the Affidavit was true and correct nor was

---

[12]Morrow also initially argues that the Affidavit violated Nevada law (ECF No. 46 at 26-27) but abandons this argument in subsequent briefing and at the Hearing. Thus, the Court will not address it here.

[13]In *United States v. Vargas-Amaya,* the Ninth Circuit Court of Appeals held that "where a warrant is issued unsupported by oath or affirmation, it is invalid under the Fourth Amendment." 389 F.3d at 904. More specifically, the Ninth Circuit has held that "probable cause, supported by Oath or affirmation" requires "the government to establish by sworn evidence presented to a magistrate that probable cause exists . . ." *United States v. Rabe,* 848 F.2d 994, 997 (9th Cir. 1988).

[14]On the call, Sergeant Powell inquired: ". . . I will print off the search warrant applic- or I'm sorry *just the search warrant itself* and then . . . do I have your permission to sign your name to it?" (ECF No. 46-3 at 4 (emphasis included).)

10

there a substantive discussion regarding the facts supporting probable cause. (ECF No. 82 at 12.)

The government responds that the constitutional requirements for a warrant were met here: (1) the Warrant was issued by neutral and detached magistrate; (2) there was a showing of probable cause; and (3) a particularized description of places to be searched and things to be seized. (ECF No. 52 at 7-12.) Specifically, the government argues that Judge Kassebaum and the affiant were not required to have a substantive discussion about probable cause over the phone because an affidavit outlining probable cause, which Judge Kassebaum stated he had read, had been emailed, the affiant was sworn in over the phone, and it was "evident from the recording that Judge Kassebaum authorized his required signatures on the warrant as a whole, which expressly incorporates the affidavit." (*Id.* at 11.) Rather, the government classifies Morrow's argument as a "technical noncompliance with procedural rules" which does not require suppression of otherwise legally obtained evidence unless there is a showing of "prejudice" or "intentional and deliberate disregard of a provision." (*Id.* at 8 (citing *United States v. Stefenson,* 648 F.2d 1231, 1235 (9th Cir. 1981); *United States v. Ritter,* 752 F.2d 435, 441 (9th Cir. 1985); *Frisby v. United States,* 79 F.3d 29, 32 (6th Cir. 1996)).)

The Warrant was supported by oath or affirmation as required by the Fourth Amendment. First, the facts in the Ninth Circuit case cited by Morrow are distinguishable from those here. In *Vargas,* the Court found that a term of supervised release can be extended based on a warrant issued during the term of supervision only if the warrant was based on sworn facts. 389 F.3d at 904. Here, the Warrant and Affidavit were issued based on facts sworn under oath. Although Sergeant Powell only explicitly requested Judge Kassebaum's signature on the Warrant and not the Affidavit, the Court finds that Judge Kassebaum made clear that Sergeant Powell had authority to sign both the application (which includes the Affidavit) and Warrant on his behalf. For example, during the phone conversation, it was clear that Judge Kassebaum had received, reviewed, and

11

approved of, both the Affidavit and Warrant. (ECF No. 46-3 at 3.) At the telephonic hearing, Sergeant Powell asks Judge Kassebaum if he received the email application and Warrant to which Judge Kassebaum replies: "That is correct. I believe there were approximately fourteen pages of affidavit and five pages of search warrant. Is that correct?" (*Id.*) Judge Kassebaum later states: ". . . I did – I did read that and that warrant is granted. That warrant will be granted based on that affidavit and search warrant." (*Id.* at 3-4.)

Furthermore, and more importantly, Judge Kassebaum placed Sergeant Powell under oath at the beginning of the telephonic conference. (*Id.*) Finally, because Judge Kassebaum had reviewed the emailed Warrant and Affidavit and found sufficient probable cause, as evidenced by their conversation, there was no need for a substantive discussion about probable cause.

The Court therefore finds that the oath and affirmation requirement under the Fourth Amendment is satisfied. Thus, the government is correct that Morrow's argument is hyper-technical and without a showing of actual prejudice or intentional and deliberate disregard of a rule, Morrow has failed to demonstrate a constitutional violation.

### C. Nighttime Search

Finally, Morrow argues that suppression is necessary because Sergeant Powell omitted material evidence in order to justify a nighttime search, thereby intentionally and deliberately disregarding the timing requirements of Federal Rule of Criminal Procedure 41.[15] Specifically, Sergeant Powell omitted material evidence—as discussed above in

---

[15] Morrow initially argued that suppression was necessary under Nevada law (Nev. Rev. Stat § 179.045(6)) (ECF No. 46 at 26-29), but he abandoned the Nevada law argument at both the preliminary hearing and Hearing, and instead argued that suppression is appropriate when there is "an intentional and deliberate disregard for a provision of the Rule in Rule 41." (ECF No. 82 at 20.) The Court addresses the latter argument only.

regards to the "with child" omissions—in order to create a false exigency, thereby amounting to an "intentional and deliberate disregard" of Rule 41.

The government responds that Morrow failed to raise a timely Rule 41 argument, and even so, Rule 41 only applies to federal and not state warrants. (ECF No. 83-1 at 2-3 (citing *United States v. Crawford,* 657 F.2d 1041, 1046 (9th Cir. 1981)).)[16] Rather, the only applicable standard is whether the search was reasonable under the Fourth Amendment, which it was, because nothing in the Fourth Amendment "declares a search unconstitutional simply because it occurs at night." (*Id.*)[17] Finally, the government argues that even if there was a violation related to the nighttime search, suppression is not an appropriate remedy because there was still probable cause for issuance of the Warrant. (*Id.* (citing *United States v. Pagan,* Case No. 2:16-cr-246-GMN-NJK, 2017 WL 6606851 (D. Nev. 2017; *United States v. Pruitt,* Case No. 2:16-cr-285-APG-NJK, 2017 WL 5505571 (D. Nev. 2017); *United States v. Cisneros,* 154 Fed. Appx. 591, 593 (9th Cir. 2005)).)

Contrary to the government's first argument, Rule 41 applies here. In *Crawford,* the Ninth Circuit case cited by the government, the court held that "the mere fact that evidence obtained by state officers, under a state warrant, based upon violations of state law, is used in a federal prosecution does not invoke the requirements of Rule 41." 657 F.2d at 1046. But, the decision goes on to say that if the search "is federal in character then the legality of the search should be analyzed in light of federal constitutional

---

[16]While the government responded to Morrow's modified argument at the preliminary hearing, it submitted a supplemental response following the preliminary hearing to more fully respond. (ECF No. 83.) As the Court noted at the Hearing and above, because Morrow did not raise his Rule 41 arguments until the preliminary hearing, the government's supplemental response is granted and considered here.

[17]The government argues in its response and at the Hearing that the search was reasonable because: it was initiated at a reasonable hour (10:35 pm) (ECF No. 83-2), and based on the body camera footage, Morrow was afforded freedom, offered a warm car to sit in, and additional clothing (ECF No. 83-3). The government further established reasonableness through the testimony of Sergeant Powell at the Hearing.

13

requirements and those provisions of Rule 41 . . ." *Id.* (citing *Lustig v. United States*, 338 U.S. 74, 78-79 (1949) (a search is a search by a federal officer "if he had a hand in it"); *United States v. Sellers*, 483 F.2d at 42 n.4 (federal search when one federal informant and federal officer participated in certain phases of the search); *United States v. Harrington*, 504 F.2d 130, 133 (7th Cir. 1974) (federal search when two federal officials were present during a state search.) As Morrow notes (ECF No. 86-1 at 2), even though the Warrant was presented to a state court justice of the peace, it was "clearly federal in character" because federal officers were involved in providing information to support the Warrant and were involved in the search. Thus, because it was a federal and not state warrant, Rule 41 applies.

Federal Rule of Criminal Procedure 41(e)(2)(A)(ii) states that a search warrant must command the officers to "execute the warrant during the daytime, unless the Judge for good cause expressly authorizes execution at another time." Fed. R. Crim. P. 41(a)(2)(B). "Daytime" is defined as "the hours between 6:00 a.m. and 10:00 p.m. according to local time." *Id.* As mentioned above, in *United States v. Stefanson,* the Ninth Circuit held:

> noncompliance with Rule 41 requires suppression of evidence only where, (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

648 F.2d at 1235 (citations omitted).

Under *Stefanson,* Morrow's argument fails. A mere violation of Rule 41 is not enough when probable cause for issuance of the Warrant has been proven, as here. As discussed above, Sergeant Powell did not omit any material evidence regarding the presence or absence of a child in the home so as to create a false exigency. Therefore, Morrow failed to demonstrate an intentional or deliberate disregard of a provision of Rule

41. Furthermore, Morrow completely failed to address, let alone demonstrate any prejudice such that "the search might not have occurred or would not have been so abrasive if the rule had been followed." *Stefanson,* 648 F.2d at 1235 (citations omitted). Suppression is therefore unwarranted on Rule 41 grounds.

Moreover, the search did not violate the Fourth Amendment's reasonableness requirements. Under a Fourth Amendment analysis, courts apply the traditional reasonableness test based on the totality of the circumstances. First, the search was initiated around 10:35 pm, a reasonable hour, and Morrow was not handcuffed. (ECF No. 83-1 at 3.) Furthermore, Morrow was offered a jacket to keep warm and agreed, but was not forced, to sit in the back of a heated patrol car to stay warm while the search was conducted. (*Id.*) Finally, Sergeant Powell testified at the Hearing that the search lasted about 2.5 hours, the standard length for this type of search. In short, the search was reasonable and does not amount to a constitutional violation.

In sum, the Court will deny Morrow's motion to suppress on all grounds.

### IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant's motion to suppress (ECF No. 46) is denied.

DATED this 25th Day of March 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE